Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| MARÍA DEL CARMEN OJEDA RODRÍGUEZ, JOSÉ LUIS OJEDA ORONA<br><br>Demandantes-Recurridos<br><br>v.<br><br>GT CONSTRUCTION, INC.; **LUIS GERARDO TORRES JIMÉMEZ**, POR SÍ Y COMO PRESIDENTE DE GT CONSTRUCTION, INC.; JOSÉ A. SANTIAGO MELÉNDEZ; POINT GUARD; ASEGURADORAS A, B Y C<br><br>Demandado–Peticionario | TA2026CE00528 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Manatí<br><br>Civil núm.: AR2025CV00898<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

El Tribunal de Primera Instancia ("TPI") denegó una moción de desestimación por emplazamiento tardío. Según se explica en detalle a continuación, concluimos que erró el TPI, pues la parte demandante no fue diligente en solicitar prontamente que se expidiera el emplazamiento (se solicitó por primera vez 130 días luego de presentada la demanda), lo cual resultó en una demora irrazonable (139 días) entre la presentación de la demanda y el diligenciamiento del emplazamiento en controversia.

I.

El **16 de mayo de 2025**, la Sa. María del Carmen Ojeda Rodríguez y el Sr. José Luis Ojeda Orona (los "Demandantes") presentaron la acción de referencia, sobre daños y perjuicios (la

"Demanda"), en contra de GT Construction, Inc. (la "Corporación"), el Sr. Luis Gerardo Torres Jiménez (el "Presidente"), el Sr. José A. Santiago Meléndez (el "Chofer") y Point Guard (la "Aseguradora").

En lo pertinente, los Demandantes alegaron que, mientras conducían su auto, fueron impactados por un camión que pertenece a la Corporación y que era conducido por el Chofer, quien era empleado de la Corporación. Se alegó que la Aseguradora tenía expedida una póliza de seguro a favor de la Corporación.

En cuanto al Presidente, únicamente se alegó que era el Presidente de la Corporación y que "tiene responsabilidad vicaria por las actuaciones de sus empleados, particularmente por las actuaciones [del Chofer], quien trabaja como chofer de camiones para" la Corporación[1].

El mismo día en que se presentó la Demanda, los Demandantes solicitaron al TPI que se expidieran emplazamientos dirigidos al Chofer y a la Corporación. Tres días luego, solicitaron al TPI que se expidiera el emplazamiento dirigido a la Aseguradora. Estos tres emplazamientos se expidieron por el tribunal el **23 de mayo**.

Resaltamos que, a pesar de haber solicitado oportunamente que se expidieran los emplazamientos contra los referidos tres demandados, los Demandantes omitieron, en esta etapa, solicitar que se expidiera un emplazamiento dirigido al Presidente. En vez, fue el **23 de septiembre** (130 días luego de presentada la Demanda), cuando los Demandantes solicitaron al TPI que expidiera el

---

[1] Valga señalar que esta alegación, por sí sola, no establece una causa de acción viable contra el Presidente. Tomando las alegaciones como ciertas, y como cuestión de derecho, quien único podría tener responsabilidad vicaria por las actuaciones del Chofer sería su patrono (la Corporación), no un oficial de la Corporación. La Demanda no contiene alegación fáctica, o teoría jurídica, que pueda justificar la concesión de un remedio contra el Presidente, pues, aun si se alegara que este es el único accionista de la Corporación, comoquiera habría que alegar hechos suficientes para justificar que se descorra el velo corporativo, y la Demanda carece completamente de este tipo de alegación. Tampoco hay alegación alguna de que el Presidente haya incurrido directamente en algún acto negligente o culposo, mucho menos uno que pudiese tener un nexo causal con el accidente.

emplazamiento dirigido al Presidente. Los Demandantes le indicaron al TPI que el no haber formulado esta solicitud anteriormente obedeció a una "inadvert[encia]". El 24 de septiembre, el tribunal expidió el referido emplazamiento, el cual fue diligenciado el **2 de octubre**.

Luego de otros trámites, el 11 de febrero de 2026, el Presidente solicitó la desestimación de la Demanda en cuanto a su persona (la "Moción"). Arguyó que fue emplazado de forma tardía, pues los Demandantes debieron ser diligentes en procurar que el emplazamiento se expidiera el mismo día, o pronto, después de que se presentó la Demanda. Sin embargo, planteó que los Demandantes "se cruz[aron] totalmente de brazos al no realizar gestión alguna dirigida a solicitar la expedición de los emplazamientos", sino hasta aproximadamente 130 días luego de presentada la Demanda. Sostuvo que el emplazamiento tardío fue "producto exclusivo de la pasividad" de los Demandantes.

El 5 de marzo, los Demandantes se opusieron a la Moción. Señalaron que "el mero transcurso de ... 120 días desde la radicación de la demanda [no] priva automáticamente al tribunal de autoridad para ordenar la expedición del emplazamiento".

Mediante una Orden notificada el 5 de marzo (la "Orden"), el TPI denegó la Moción.

El 16 de marzo, el Presidente solicitó la reconsideración de la Orden, lo cual fue denegado por el TPI mediante una Orden notificada el 9 de abril.

Inconforme, el 30 de abril, el Presidente presentó el recurso que nos ocupa; plantea que erró el TPI al denegar la Moción. El 4 de mayo, ordenamos a los Demandantes mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la Orden.

Oportunamente, los Demandantes comparecieron. Tal como lo hicieron ante el TPI, arguyeron que, "transcurridos ciento veinte

(120) días desde la presentación de la demanda, el [TPI no] queda automáticamente privado de autoridad para ordenar la expedición de un emplazamiento inicialmente omitido". Plantean que la Orden "constituye un ejercicio legítimo y razonable de la discreción judicial dirigido a viabilizar la adjudicación del caso en sus méritos…". Resolvemos.

II.

El emplazamiento es el mecanismo mediante el cual los tribunales adquirimos jurisdicción sobre una persona y, a su vez, esta queda notificada de que existe un procedimiento judicial en su contra, y se le requiere comparecer para formular la alegación que corresponda. *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 480 (2019); *Sánchez Rivera v. Malavé Rivera*, 192 DPR 854, 869 (2015); *Medina v. Medina,* 161 DPR 806, 818 (2004). De esta forma, la parte demandada tiene la oportunidad de ejercer su derecho a comparecer y a presentar prueba a su favor. *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 30 (2014).

La Regla 4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 4, es la que reglamenta el proceso y las formalidades del emplazamiento en los pleitos civiles. Reconoce dos métodos para diligenciar el emplazamiento: de forma personal o mediante edicto. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1005 (2021); *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 987 (2020). El emplazamiento personal es el método idóneo para adquirir jurisdicción. Sin embargo, por excepción y en circunstancias específicas, nuestro ordenamiento permite que se utilice el mecanismo del emplazamiento por edicto. *Caribbean Orthopedics*, *supra.*

En lo aquí pertinente, en cuanto al término para diligenciar un emplazamiento personal, la Regla 4.3(c) de las de Procedimiento Civil, 32 LPRA Ap. V, 4.3(c), establece que el "emplazamiento será

diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda". También se dispone que el tribunal "deberá expedir [el emplazamiento] el mismo día en que se presenta la demanda". Si el emplazamiento no se expide el mismo día, "el tiempo que demore será el mismo tiempo adicional que los tribunales otorgarán para diligenciar" el emplazamiento. Transcurrido dicho término sin que el emplazamiento haya sido diligenciado, "el Tribunal deberá dictar sentencia decretando la desestimación y archivo" de la demanda.

El término para diligenciar el emplazamiento personal (120 días) es improrrogable. *Bernier González v. Rodríguez Becerra,* 200 DPR 637, 649 (2018); *Sánchez Ruiz,* 203 DPR a la pág. 991. Si en ciento veinte (120) días el demandante no ha podido diligenciar el emplazamiento, automáticamente se desestimará su causa de acción. *Bernier González, supra.*

III.

Concluimos que el emplazamiento al Presidente se diligenció de forma tardía. Veamos.

Según arriba explicado, cuando un emplazamiento se expide en una fecha distinta a la de la presentación de una demanda, la norma general es que el término de 120 días para diligenciar el emplazamiento comienza a decursar desde la fecha de la expedición del emplazamiento. *Pérez Quiles v. Santiago Cintrón,* 206 DPR 379, 388 (2021). En ese sentido, y como bien plantean los Demandantes, el TPI no pierde autoridad, simplemente por el paso de determinado plazo, para expedir un emplazamiento.

No obstante, ello presupone que la parte demandante ha sido diligente en procurar que se expidan prontamente los emplazamientos. Adviértase que la parte demandante tiene la obligación de, "al momento de presentar la demanda", "acompañ[ar] los emplazamientos correspondientes" para que el TPI los expida.

*Bco. Des. Eco. v. AMC Surgery,* 157 DPR 150, 154 (2002).  Es decir, la parte demandante "no puede presentar una demanda y esperar a que [el tribunal] … expida los emplazamientos correspondientes, sino que corresponde al demandante el deber de someterlos conjuntamente con la demanda".  *Íd.*  Por tanto, una parte demandante no puede "cruzarse de brazos y dejar que transcurra **un término irrazonablemente largo** sin que se haya expedido el emplazamiento".  *Bco. Des. Eco., supra,* 157 DPR a la pág. 157 (énfasis suplido).

En este caso, surge claramente del récord que los Demandantes, sin siquiera intentar aducir una justificación razonable, se cruzaron de brazos por varios meses y omitieron completamente cualquier tipo de gestión dirigida a que se expidiera el emplazamiento en controversia.  Ello a pesar de que, en cuanto a los otros tres demandados, los Demandantes cumplieron con su obligación de solicitarle prontamente al TPI la expedición de los emplazamientos correspondientes.

Por tanto, no podemos concluir que el diligenciamiento del emplazamiento al Presidente haya sido oportuno.  En este caso particular, por la extrema falta de diligencia de los Demandantes, y por el extenso tiempo transcurrido entre la presentación de la Demanda y la primera vez que se solicitó la expedición del emplazamiento (130 días), el término para diligenciar no se calcula desde la expedición del emplazamiento.  En vez, tenemos que calcular el término desde el momento en que, ejercida la debida diligencia, se podría haber obtenido la expedición del emplazamiento. En este caso, dicha fecha habría sido el 23 de mayo, que fue precisamente la fecha en que el tribunal expidió los emplazamientos dirigidos a los otros tres demandados.  Al haberse diligenciado el emplazamiento al Presidente el 2 de octubre, los Demandantes se excedieron del término improrrogable de 120 días,

por lo que procede la desestimación de la acción en contra del Presidente.

IV.

Por los fundamentos expuestos, se expide el auto de *certiorari*, se revoca la Orden recurrida y se devuelve el caso al Tribunal de Primera Instancia para que dicte sentencia desestimando la demanda de referencia en cuanto al peticionario co-demandado (Sr. Luis Gerardo Torres Jiménez).

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones